## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into by and between Stephen Boyd (the "Named Plaintiff" or "Boyd") and Bottling Group, LLC (operating as Pepsi Beverages Company and Pepsi Bottling Company, LLC) ("Defendant" or "Pepsi") to resolve all claims asserted by Boyd against Pepsi in the action referred to below.

WHEREAS, on May 27, 2014, Boyd individually and on behalf of all others similarly situated, filed this case – *Boyd v. Pepsi Beverages Company, et al,* Civil Action Number 1:14-cv-12289-RBC -- alleging that Pepsi unlawfully did not properly pay Boyd and other Bulk Customer Representatives ("BCRs") overtime wages in violation of the Fair Labor Standards Act ("FLSA") and the Massachusetts Overtime Law ("MOL"). Boyd filed the suit seeking certification of a FLSA collective action under §216(b) and a Rule 23 class under the MOL. Because he alleged a willful violation under the FLSA, under 29 U.S.C. § 255(a), he claimed that the statute of limitations is three years going back to May 27, 2011; and

WHEREAS, the parties have engaged in good faith litigation including the exchange of documents and a full investigation of claims and defenses available to each party; and

WHEREAS, Plaintiff believes his claims have merit, and believes that Defendant did not properly calculate and/or pay overtime compensation to its BCRs both within the Commonwealth of Massachusetts and across the country; and

WHEREAS, Defendant believes Plaintiff's allegations are without support, and that it has at all times paid its employees fully, properly, and fairly under the law; and

WHEREAS, both Plaintiff and Defendant understand the risks and costs associated with continued litigation, including the risks and costs associated with conditionally certifying a nationwide collective action, litigating decertification, certifying a Massachusetts class action, and taking the case to trial; and

WHEREAS, understanding the relative strengths and weaknesses of their respective positions against the risks and costs associated with continued litigation, the parties agreed to jointly move for a stay of the litigation and to engage in good faith negotiations; and

0YHD-200487

WHEREAS, the parties appeared before Mediator Mark Irvings on February 26, 2015. and again on April 1, 2015. and engaged in extensive in-person negotiations and reached an agreement to resolve this litigation in principle subject to Court approval; and

WHEREAS, the parties entered into a Memorandum of Understanding (the "MOU") on April 1, 2015. which set forth the general terms of an agreement to resolve the Lawsuit;

THEREFORE, in consideration of the premises and the mutual promises and terms set forth in the Agreement, the Parties agree as follows:

## I.   DEFINITIONS

In addition to terms defined elsewhere in this Stipulation, as used in this Stipulation the following terms have the meanings set forth below:

1.1   "Action" means the civil action captioned *Stephen Boyd v. Pepsi Beverages Company and Pepsi Bottling Company, LLC*, No. 1:14-cv-12289-NMG, now pending in the United States District Court for the District of Massachusetts.

1.2   "BCR" means Bulk Customer Representative.

1.3   "Class Counsel" means Richard E. Hayber and Anthony J. Pantuso of the Hayber Law Firm, LLC, and Shannon Liss-Riordan of Lichten & Liss Riordan, P.C.

1.4   "Claim Form" means a Consent to Join Action and Authorization to Represent under the Fair Labor Standards Act.

1.5   "Counsel for the Defendant" means Samantha D. Hardy and Ashley T. Hirano of Sheppard, Mullin, Richter & Hampton, LLP.

1.6   "Final" with respect to the Settlement means one of the following dates, as applicable:

a.      the period for filing any appeal, writ, or other appellate proceeding opposing the Settlement has elapsed without any appeal, writ, or other appellate proceeding having been filed;

0YHD-200487

b.      any appeal, writ or other appellate proceeding opposing the Settlement has been dismissed finally and conclusively with no right to pursue further remedies or relief; or

c.      or any appeal, writ or other appellate proceeding has upheld the Court's final order with no right to pursue further remedies or relief.  In this regard, it is the intention of the parties that the Settlement shall not become effective until the Court's order approving the Settlement is completely final, and there is no further recourse by an appellant or objector who seeks to contest the Settlement..

1.7      "Final Approval Order" means the Court's order granting final approval of the Settlement and this Stipulation, and dismissing the Action with prejudice.

1.8      "FLSA Class" means all former or current BCRs who have worked for Pepsi throughout the United States during the FLSA Class Period.

1.9      "FLSA Class Period" means the period between May 27, 2011, and the date each individual FLSA Class member's location converted or converts to a non-VROT-on-base-salary compensation system, or through the date the Portland, Oregon location converts, whichever is sooner.  In no event will any individual location's FLSA Class Period extend beyond the date the Portland, Oregon location converts.

1.10     "Massachusetts Class" means all former or current BCRs who have worked for Pepsi in Massachusetts during the Massachusetts Class Period.

1.11     "Massachusetts Class Period" means the period between May 27, 2012, and the date each individual Massachusetts Class member's location converted or converts to a non-VROT-on-base-salary compensation system, or through the date the Portland, Oregon location converts, whichever is sooner.  In no event will any individual location's Massachusetts Class Period extend beyond the date the Portland, Oregon location converts.  The Parties acknowledge that the limitations period for Massachusetts state law claims changed during the pendency of this

0YHD-200487

Action, but that the two-year statute of limitations applies in this instance based on the date of filing. Claims before May 27, 2012, are outside of this two-year limitations period and cannot be brought as part of this or any other related lawsuit.

1.12    "Notice" means the Notice of Pendency of Class Action Settlement.

1.13    "Notice Packet" means the Notice and Claim Form.

1.14    "Payout Fund" means the Settlement Fund, less attorneys' fees and costs.

1.15    "Remaining Funds" means those funds remaining in the Payout Fund after payment of all settlement awards to all Settlement Class Members. Remaining Funds shall be used first to pay for Plaintiff's Incentive Award, any and all employer-owed taxes, and claims administration expenses. Remaining Funds shall then be used to ensure that Settlement Class Members in later-converting locations receive equal per-workweek amounts to those in earlier-converting locations if the Parties' estimated amounts are too low. Any amounts remaining after the Remaining Funds have been used for these purposes shall then be sprinkled back pro-rata amongst all Settlement Class Members as described in Paragraph 8.7.

1.16    "Settlement Class Member" means all Class Members who have submitted a timely and valid Claim Form.

## II.    SETTLEMENT

2.1    For the purposes of settlement only, Pepsi agrees to pay the sum of Three Million Dollars ($3,000,000) (the "Settlement Fund"). The Settlement Fund shall be the maximum amount Pepsi is obligated to pay under this Settlement, with the express and sole exception of any incentive award, claims administration expenses, or taxes not covered by amounts remaining in the Payout Fund after distribution to the Settlement Class as contemplated in paragraph 1.15 of this Agreement, and any amounts contemplated in paragraph 5.7 of this Agreement.

0YHD-200487

2.2     The Settlement Fund is inclusive of attorneys' fees, costs, and expenses directly related to the Action (which includes all such fees and costs incurred to date, as well as such fees and costs incurred in documenting the settlement, administering the settlement, and obtaining a dismissal of the Action). Other items, including the Named Plaintiff's incentive award, all taxes, and all costs of administration, including settlement administration fees, will be paid out of Remaining Funds and shall be addressed as more fully described below.

2.3     At no time shall Defendant have the obligation to segregate funds comprising the Settlement Fund from its other assets and will retain exclusive authority over, and responsibility for, those funds.

2.4     Class Counsel will request, and Defendant and its counsel will not oppose, an award of attorneys' fees and costs in the amount of One Million Dollars ($1,000,000). Class Counsel will be issued an IRS Form 1099 for their award of fees and costs. Class Counsel shall not be permitted to petition the Court for, or accept, any additional payments for fees, costs, or interest, and the fees and costs award shall be for all claims for attorneys' fees and costs past, present, and future incurred in the Action. Pepsi's payment of the Fees Award and Costs Award to Class Counsel shall constitute full satisfaction of the obligation to pay any amounts to any person, attorney, or law firm for attorneys' fees, expenses or costs in the Action incurred by any attorney on behalf of Named Plaintiff and/or the Class. Further, said payment shall relieve Pepsi, the Claims Administrator, the Settlement Fund, and Defendant's Counsel of any other claims or liability to any other attorney or law firm for any attorneys' fees, expenses, and/or costs to which any of them may claim to be entitled on behalf of Named Plaintiff and/or the Class.

2.5     Class Counsel will request, and Defendant and its counsel will not oppose, payment to the Named Plaintiff of an incentive award in the amount of Fifteen

0YHD-200487

Thousand Dollars ($15,000.00), in addition to whatever payment he is otherwise entitled to receive as a member of the Massachusetts Class and/or the FLSA Class.

2.6     Each FLSA and Massachusetts Class Member, including the Named Plaintiff, will be provisionally assigned an award amount based on his or her tenure as part of the relevant Settlement Class.  To arrive at these figures, the Payout Fund will be distributed pro-rata based on the number of weeks each employee held a VROT-eligible BCR position during the relevant Class Period.  The number of workweeks for each FLSA and Massachusetts Class Member will be determined by adding all the calendar days within the inclusive dates of employment and dividing that number by five.  Any partial workweek will be expressed as a percentage of a full workweek.

2.7     Each FLSA Class Member shall have his or her provisional settlement amount weighted according to the following formula: weeks worked between May 27, 2012, and the end of the FLSA Class Period shall be given a weight of one (1), while weeks worked between May 27, 2011, and May 26, 2012, shall be given a weight of one-half (1/2).  Thus, if an FLSA Class Member has a claim for weeks worked after May 27, 2012, worth $100, a claim based on comparable weeks worked before May 27, 2012, shall be worth $50.  This weighting takes into account the legal uncertainties of proving that Defendant acted willfully under the FLSA.

2.8     Each Massachusetts Class Member shall have his or her provisional settlement amount assigned a weight of three (3).  Thus, if an FLSA Class Member has a claim worth $100, a comparable claim by a Massachusetts Class Member shall be worth $300.  This weighting takes into account the mandatory treble damages under the MOL.  The Parties agree that Massachusetts Class Members'

0YHD-200487

workweeks shall not be double counted under both the FLSA and Massachusetts calculations.

2.9     Each Class Member in a location that has not yet converted shall have his or her workweeks calculated as of the date that the data is pulled for those Class Members in locations who have already converted. Those workweeks will be added to the number of workweeks estimated between the date the data is pulled and the date Pepsi anticipates the Class Member's particular location will convert, or the date the Portland, Oregon location will convert, whichever is sooner. The Parties agree this is the best estimate possible to ensure that Class Members in the later-converting locations are awarded their full amounts. However, these initial calculations will later be adjusted, as set forth below.

## III.     THE PARTIES' DUTIES TO SEEK PRELIMINARY COURT APPROVAL

3.1     Within ten (10) days after execution of this Settlement Agreement, or as soon thereafter as reasonably possible, Class Counsel shall provide to Counsel for the Defendant drafts of the Notice Packets and the Class Representative's motion for Preliminary Approval of the Settlement.

3.2     The Class Representative's motion for entry of the Preliminary Approval Order shall request the following:

a.      For purposes of this Settlement only, conditional appointment of Plaintiff as Class Representative of the FLSA and Massachusetts Settlement Classes;

b.      For purposes of this Settlement only, conditional appointment of Class Counsel as counsel for the FLSA and Massachusetts Settlement Classes;

c.      For purposes of this Settlement only, conditional certification of the Action as a collective action under Section 216 of the FLSA as to the Class Representative's claim for overtime compensation under that statute;

0YHD-200487

d.     For purposes of this Settlement only, conditional certification of the Settlement Class as a class under Rule 23 of the Federal Rules of Civil Procedure as to the Class Representative's claims arising under the MOL;

e.     Preliminary approval of the Settlement set forth in this Settlement Agreement;

f.     Approval, as to form and content, of the Notice Packets, and an order directing Class Counsel to mail the Notice Packets to the Class Members;

g.     The setting of an Opt-In Deadline sixty (60) days out for Class Members to timely return to Class Counsel a valid and completed Claim Form.

h.     The setting of an Opt-Out Deadline thirty (30) days out for Massachusetts Class Members to timely file valid requests for exclusion from the Settlement.

i.     The setting of an Objection Deadline thirty (30) days out for FLSA and Massachusetts Class Members to timely file objections to any aspect of the Settlement contemplated by this Stipulation and thereby establish their standing to be heard at the Fairness Hearing and to seek reconsideration or appellate review of the Final Approval Order; and

j.     The scheduling of the Fairness Hearing.

3.3     The Parties shall jointly draft the Notices for submission to the Court for approval. The Notices will include, but shall not be limited to, information regarding the nature of the Action; a summary of the substance of the settlement; the class definitions; the procedure and time period to submit a Claim Form or object to the settlement; and the date for the Final Approval Hearing.

3.4     The Parties shall attempt in good faith to resolve any disagreement between them regarding the forms or content of the motion for entry of the Preliminary Approval Order and the Notice Packets. If they are unable to resolve any such dispute despite their good faith efforts to do so, the dispute shall first be referred

0YHD-200487

to Mark Irvings for assistance before being referred to the Court for resolution, if necessary.

3.5 Within ten (10) days of filing a motion for an order preliminarily approving the settlement, Defendant shall mail out appropriate notices under the Class Action Fairness Act ("CAFA") to the United States Attorney General and the attorneys general of all states in which a Massachusetts Class Member currently resides. Supplemental CAFA notices shall be mailed for those Massachusetts class members in locations that have not yet converted.

## IV.  CLAIMS PROCESS METHOD

4.1 The Parties acknowledge that the claims process in this matter will be complicated due to the staggered conversion dates, and for that reason, have agreed that the following is the best process practicable:

4.2 Pursuant to paragraph 5.1, below, Class Counsel will calculate workweeks and weights for all Class Members.  For those Class Members in locations that have not yet converted, Defendant will provide all workweeks for these later-converting Class Members pursuant to paragraph 2.9, above, and shall set aside the estimated amount, based on headcount and estimated weeks remaining until conversion, to cover payouts for Class Members in these remaining locations.  In other words, the payout for the not-yet-converted locations will be estimates.

4.3 The Parties will submit the settlement to the Court and obtain Preliminary Approval.

4.4 Upon Preliminary Approval, pursuant to the procedures contemplated in paragraph 5.3, below, Class Counsel will mail Notice Packets to all Class Members, regardless of whether their location has converted as of the notice mailing date.

0YHD-200487

4.5     Upon receipt of Claim Forms, Class Counsel will determine who qualifies as a Settlement Class Member, and will calculate their share of the Payout Fund pursuant to paragraph 8.1, below.

4.6     Class Counsel will move for and obtain Final Approval.

4.7     Once the settlement becomes final under paragraph 1.6, and pursuant to the procedures contemplated in section 8 of this Agreement, the Claims Administrator shall mail out all individual Settlement Awards for those Settlement Class Members whose locations have already converted. The Claims Administrator shall ensure payments estimated for those Settlement Class Members whose locations have not yet converted are set aside. The Claims Administrator shall also pay out pro-rata attorneys' fees and costs, as well as the incentive award, taxes, and claims administration expenses from Remaining Funds.

4.8     The Parties recognize that the estimated per-workweek amount for the later-converting locations must be estimated at the time of the data pull, and may vary from actual amounts calculated. The Parties further agree that this estimation and later recalculation (as set forth below) is the best method practicable under the circumstances. After conversion of the remaining locations, and no later than the conversion of the Portland, Oregon location, the Claims Administrator shall compare the estimated per-workweek amount for Settlement Class Members in these later-converting locations against the actual per-workweek amount owed based on actual headcount and weeks worked. To the extent these estimated per-workweek amounts were too low, the Parties agree that any Remaining Funds, after payment of incentive awards, employer-owed taxes and any claims administration expenses, shall first be used to increase per-workweek payments for those Settlement Class Members in later-converting locations so that they receive the same per-workweek amounts that other Settlement Class Members

0YHD-200487

have received.  To the extent estimated per-workweek amounts were too high, the Parties agree that any per-workweek payment in excess of what other Settlement Class Members received will be added to the Remaining Funds.  As part of this process, individuals who were hired into BCR positions in a later-converting location after notices were sent, and who did not receive a notice, will be offered the opportunity to participate in the settlement on the same terms and conditions.  In other words, these newly-hired BCRs will be offered an individual Settlement Award at the same amount, based on the weeks worked at the appropriate weighting, in exchange for releasing the same claims released as part of this settlement.  Upon performing this analysis, the Claims Administrator shall mail all individual Settlement Awards to these Settlement Class Members in later-converting locations.  The Claims Administrator shall also pay out remaining attorneys' fees and costs associated with this payment to the later-converting Settlement Class Members.

4.9    After all first-round payments have been made to both groups of Settlement Class Members (both converted and later-converting groups), the Claims Administrator will divide any Remaining Funds pro rata amongst all Settlement Class Members and make a second "sprinkle back" payment.  For those Settlement Class Members whose pro rata "sprinkle back" is less than fifty dollars ($50.00), these individuals will not receive this additional payment, but rather their amounts will be added back into the Remaining Funds and redistributed pro rata amongst those whose "sprinkle back" amounts were over the $50 threshold when first analyzed.

4.10   After the check stale date referenced in paragraph 8.8, any funds associated with uncashed checks from any round of mailing shall be donated *cy pres* pursuant to the procedures in that paragraph 8.8.

## V.    THE PARTIES' DUTIES TO NOTIFY THE CLASSES

0YHD-200487

5.1     Within thirty (30) calendar days after execution of this Settlement Agreement, or as soon thereafter as reasonably possible, Counsel for the Defendant shall send to Class Counsel the name and last-known address of each FLSA and Massachusetts Class Member, and starting and ending dates of employment within the relevant Class Periods for all members of the FLSA and Massachusetts Settlement Classes. For class members in those locations that have not yet converted, Counsel for the Defendant shall send this same information as it is available on the date the data was pulled for the locations that have previously converted.  Class Counsel shall keep the foregoing information strictly confidential, and shall not use or disclose any of it to anyone, including the Class Representative, for any purpose, except upon Defendant's express written, advance consent or by order of the Court. Before receiving the Class Members' information, any Class Counsel who will have access to that information will sign a declaration stating that he or she or his or her office will initiate no contact with the class Members whatsoever, beyond sending two copies of the Court-approved Notice, and will destroy the information at the conclusion of the settlement administration process.  Should any Class Member file a suit with Class Counsel as their counsel, both that Class Member and Class Counsel will file a declaration confirming that this provision has not been violated.  Should any Class Member file suit with an attorney other than Class Counsel as their counsel, Class Counsel will file a declaration confirming that this provision has not been violated and that he/she or his/her office did not refer the Class Member to the filing attorney.

5.2     Promptly upon receipt of the foregoing data, Class Counsel shall calculate each Class Member's Preliminary Estimated Settlement Share, which shall be equal to his or her pro rata share of the Payout Fund, shall be based upon the workweek data provided by Defendant, and the weighting described above in paragraphs 2.7 and 2.8 of this Agreement.  Upon completion of these calculations, Class Counsel

0YHD-200487

shall provide them to Counsel for the Defendant for confirmation of the
calculations.

5.3     Within thirty (30) days after Class Counsel receives notice of the entry of the
Preliminary Approval Order by the Court, Class Counsel shall mail the Notice
Packets to the Class Members at their last-known addresses by first-class mail.
Prior to mailing, Class Counsel will perform a search based on the National
Change of Address Database information to update and correct for any known or
identifiable address changes. If a new address is obtained by way of a returned
Notice Packet, then Class Counsel shall promptly forward the original Notice
Packet to the updated address via first-class regular U.S. mail indicating on the
original Notice Packet the date of such re-mailing. In the event any Class Notice
is returned as undeliverable, Class Counsel shall use their best efforts to obtain
current address information for the affected Class Member and resend the Class
Notice. The Parties agree that this procedure is the best notice practicable under
the circumstances.

5.4     Class Members shall have sixty (60) days from the date of mailing to return their
Claim Forms. Class Members shall have thirty (30) days to file any objection,
and Massachusetts Class Members shall have thirty (30) days to file any request
for exclusion. The date of the postmark on the return envelope (or "received"
stamp in the event of personal delivery) shall be the exclusive means used to
determine whether a Class Member has "timely" returned his/her Claim Form or
validly requested exclusion on or before the applicable deadline.

5.5     Claim Forms shall be deemed valid only if: (1) the Class Member has provided
on the Claim Form his or her name and the first five digits of his/her Social
Security Number; (2) the Class Member has dated and signed the Claim Form;
and (3) the name and the first five digits of his/her Social Security Number
provided by the Class Member on the Claim Form match Defendant's records as

0YHD-200487

provided.  If a Class Member's Claim Form is defective as to any of these three requirements, the Class Member shall be given an opportunity to cure the defect(s).  Any such defective Claim Form shall be returned to the Class Member, who will be informed of the defect(s), how to correct the defect(s), and the deadline to do so.  The Class Member will be given fifteen (15) days from the date the Claim Form was mailed back to the Class Member within which to cure the defect(s) and return the Claim Form to Class Counsel.  If the revised Claim Form is not postmarked within that fifteen (15) day period, it shall be deemed untimely and the claim will be rejected.  The name and the first five digits of the Social Security Number provided by the Class Member will be deemed to match Defendant's records only if:  (1) both the first name and the last name and the first five digits of the Social Security Number provided by the Class Member match Defendant's records; or (2) the first name and the first five digits of the Social Security Number provided by the Class Member match Defendant's records and it appears the last name has been changed as a result of a change in marital or domestic partner status.

5.6    Class Counsel will send a second Notice Packet to those Class Members who have not returned a Claim Form thirty (30) days after the initial mailing.

5.7    A third-party will make follow-up telephone calls to those Class Members who have not submitted Claims Forms after two notice mailings and who have claims in amounts that place them in the highest twenty-five percent (25%) of outstanding claimants.  The cost of these follow-up calls will be paid by Pepsi.

5.8    The Parties agree to use their best efforts to carry out the terms of this Settlement.  At no time shall any of the parties or their counsel seek to solicit or otherwise encourage Class Members to submit written objections to the Settlement.

5.9    Prior to the Opt-In Deadline, Class Counsel shall periodically file with the Court any valid and completed Consent Forms received from Class Members.  Class

0YHD-200487

Counsel shall also communicate to Counsel for the Defendant any issues or concerns regarding the validity or completeness of any returned Consent Form. To the extent Class Counsel receives incomplete or otherwise invalid Consent Forms, Class Counsel shall send the Class Member a letter with language pre-approved by all Parties providing the Class Member with information on the deficiencies and the information needed and time remaining to cure those deficiencies.

5.10    All Claims Forms and objections will be submitted to Class Counsel, and provided by Class Counsel to Counsel for the Defendant, along with an updated claims administration report showing the number of packets mailed, returned, and re-mailed; and the number of claims and objections, on a weekly basis, from the date of the first mailing through the conclusion of the claims process.

5.11    Within five (5) days after the Opt-In Deadline, Class Counsel shall have filed all valid and completed Consent Forms that were timely received from Class Members, and shall notify Counsel for the Defendant of the total number of Class Members who did not timely return a valid and completed Consent Form.

## VI.    THE PARTIES' DUTIES TO SEEK FINAL COURT APPROVAL

6.1    Within ten (10) days after the Opt-In Deadline, Class Counsel shall provide to Counsel for the Defendant a draft of the Class Representative's motion for entry of the Final Approval Order.

6.2    The Class Representative's motion for entry of the Final Approval Order shall attest to the mailing of the Notice Packets and the receipt of timely Consent Forms, shall address any objections to the Settlement that were timely submitted by Class Members in accordance with the Preliminary Approval Order, and shall request the following:

0YHD-200487

a.      For purposes of this Settlement only, appointment of Plaintiff as Class Representative of this FLSA and Massachusetts Settlement Classes;

b.      For purposes of this Settlement only, appointment of Class Counsel as counsel for the FLSA and Massachusetts Settlement Classes;

c.      For purposes of this Settlement only, certification of the Action as a collective action under Section 216 of the FLSA as to the Class Representative's claim for overtime compensation under that statute;

d.      For purposes of this Settlement only, certification of the Massachusetts Settlement Class as a class under Rule 23 of the Federal Rules of Civil Procedure as to the Class Representative's claim for overtime compensation under the MOL;

e.      Approval of the Parties' CAFA notices; and

f.      Final approval of the Settlement set forth in this Settlement Agreement.

6.3      The Parties shall attempt in good faith to resolve any disagreement between them regarding the form or content of the motion for entry of the Final Approval Order. If they are unable to resolve any such dispute despite their good faith efforts to do so, the dispute shall first be referred to Mark Irvings for assistance before being referred to the Court for resolution, if necessary.

6.4      Promptly after the Parties reach agreement on the form and content of the Class Representative's motion for entry of the Final Approval Order, Class Counsel shall file the motion with the Court. Class Counsel shall also file at this time their motions for the Costs and Attorneys' Fees, and the Class Representative's motion for the Incentive Award. Defendant shall not object to any of these motions so long as they are consistent with the terms of this Agreement.

6.5      Any Class Member may appear at the Fairness Hearing with or without counsel. Any Class Member who timely filed an objection to the Settlement in accordance with the Preliminary Approval Order, or his or her counsel, may be heard by the Court at the Fairness Hearing, and will have standing to seek reconsideration or

0YHD-200487

appellate review of the Final Approval Order.  Any Class Member who did not timely file an objection to the Settlement in accordance with the Preliminary Approval Order, or his or her counsel, may not be heard by the Court at the Fairness Hearing, and will not have standing to seek reconsideration or appellate review of the Final Approval Order.

6.6     The Parties agree that upon completion of the process referenced in Section VIII below and final approval of the settlement, the Action will be dismissed with prejudice and on the merits.  The dismissal shall be without costs to any Party. Upon entry of the Final Order of Approval, all Settlement Class Members, and all Massachusetts Class Members who have not opted-out of the Settlement, shall have, and by operation of the Final Order of Approval shall be deemed to have, completely, voluntarily, knowingly, unconditionally, and forever released, acquitted and discharged the Released Parties from the Released Claims as defined below.   This dismissal will constitute a binding and final resolution of any and all claims released as part of the Action.

## VII.   CERTIFICATION STIPULATION

7.1     For purposes of this Settlement only, the Parties stipulate that the Court may certify the Action as a collective action under Section 216 of the FLSA and as a class action under Rule 23 of the Federal Rules of Civil Procedure.  More specifically, the Parties agree that, for purposes of this Settlement only, the Class Members are similarly situated within the meaning of Section 216 and that the requirements of Rule 23(a) and (b) are satisfied.

7.2     The foregoing stipulation (the "Certification Stipulation") is not and shall not be treated as an admission that class or collective action certification would be proper outside the context of the Settlement or that discovery would reveal facts warranting such certification.  Neither this Stipulation as a whole nor the Certification Stipulation on its own is admissible in this or any other action or

0YHD-200487

proceeding as evidence that the claims advanced in the Action, or any other class or collective action claims, should be certified or not decertified.

## VIII.   THE PARTIES' DUTIES TO ADMINISTER THE SETTLEMENT

8.1   Within seven (7) business days after the Final Approval Order and the Court's orders with respect to the motions for Costs and Attorneys' Fees and the Incentive Award have all been entered by the Court, Class Counsel will perform allocation and payout calculations, and turn them over to a payroll administrator or claims administrator ("Claims Administrator") to perform tax calculations, issue checks, withhold taxes, and do tax payment and reporting.

8.2   The FLSA and Massachusetts Class Members' Gross Settlement Amounts will be the amounts calculated by Class Counsel as set forth above. Each Gross Settlement Amount will be comprised 50% of wages ("wage portion") and 50% for non-wages representing interest, liquidated damages and/or treble damages under the FLSA and MOL, and any other non-wage damages ("non-wage component"). For the wage portion of each Settlement Class Member's Gross Settlement Amount, deductions will be made for state and federal taxes owed by the Settlement Class Member as a result of the payment, resulting in a "Net Wage Component." The total of the Net Wage Component and the non-wage component will be the Settlement Class Member's "Preliminary Net Settlement Amount."

8.3   Within fifteen (15) days of the date the Settlement becomes final, Pepsi shall wire to or otherwise fund a specified account created by the Claims Administrator to pay all amounts owed under this Agreement. The Claims Administrator shall set aside those amounts estimated necessary to pay Settlement Class Members in locations that have not yet converted.

8.4   Within thirty (30) days of the date the Settlement becomes Final, the Claims Administrator will pay all claims for those Settlement Class Members whose

0YHD-200487

locations have already converted; an associated pro-rata portion of court-approved attorneys' fees and costs; Plaintiff's incentive award; and all claims administration fees relating to all locations that converted prior to preliminary approval. The Claims Administrator shall have the authority and obligation to make payments, credits, and disbursements, including payments and credits in the manner set forth herein, to Settlement Class Members from the Payout Fund in accordance with the methodology set out in this Agreement and orders of the Court.

8.5    To the extent any tax returns must be filed for the Settlement Fund pursuant to this Agreement, the Claims Administrator shall cause to be timely and properly filed all informational and other tax returns, if any, necessary with respect to the Settlement Fund. Such returns shall be consistent with this Paragraph. Any expenses consisting of the expenses and costs incurred in connection with the operation and implementation of this Paragraph (including, without limitation, reasonable expenses of tax attorneys, accountants or other designees retained by Pepsi and/or the Claims Administrator as required for the preparation and filing of tax returns described in this Paragraph) shall be treated as, and considered to be, a cost of administration of the Settlement.

8.6    Within thirty (30) days of the date the Portland, Oregon location converts, the process described in Paragraphs 8.1 through 8.4 above shall be repeated for all locations that converted subsequent to preliminary approval. The Claims Administrator shall determine whether the per-workweek amount estimated for these locations is higher or lower than the amounts previously paid out per workweek to those locations that had already converted and been paid. If the per-workweek amount for these later-converting locations is too low, the Parties agree that they shall first apply any Remaining Funds (after payment the incentive award, employer-owed taxes, and any claims administration expenses) to bring

0YHD-200487

the per-workweek amounts of this later-converting group up to the per-workweek amounts of the already-converted group. If the per-workweek amount for these later-converting locations is too high, the Parties agree that any additional amounts shall be added to the Remaining Funds. The Parties shall attempt in good faith to resolve any disagreement between them regarding the allocation of these settlement amounts. If they are unable to resolve any such dispute despite their good faith efforts to do so, the dispute shall first be referred to Mark Irvings for assistance before being referred to the Court for resolution, if necessary.

8.7    Following the process described in Paragraph 8.6 above, any Remaining Funds of the Payout Fund not used to pay for claims administration expenses, Named Plaintiff's Incentive Award, taxes, and claims administration expenses will be distributed proportionally to Settlement Class Members, as described above. In other words, at the conclusion of the second-round funding for Settlement Class Members in locations that converted after preliminary approval, and after payment of all other amounts included in the Settlement Amount, and after reallocation (if necessary) of any amounts to equalize the per-workweek amounts, any remaining amounts will be sprinkled back pro rata to Settlement Class Members in a second check mailing. For those Settlement Class Members whose pro rata "sprinkle back" is less than fifty dollars ($50.00), these individuals will not receive this additional payment, but rather their amounts will be added back into the Remaining Funds and redistributed pro rata amongst those whose "sprinkle back" amounts were over the $50 threshold when first analyzed.

8.8    Checks will remain valid for ninety (90) days. Checks remaining uncashed after all check mailings will be donated *cy pres* to The United Way.

8.9    All Massachusetts Class Members who do not file a timely and valid request for exclusion will release all state law claims under paragraph 11.1 of this Agreement. If Massachusetts Class Members submit Consent Forms, they will

0YHD-200487

receive an individual Settlement Award as contemplated in this Agreement and will also release any and all federal claims under paragraph 11.2 of this Agreement.

## IX.   ACKNOWLEDGEMENTS

9.1   Except for Defendant's obligation to pay the Settlement Fund, the parties acknowledge and agree that they shall each be responsible for any and all fees, costs and expenses incurred by them in connection with, or which have arisen or may arise out of, the Action, and may not seek reimbursement thereof from the other Party or any Releasee.

9.2   Plaintiff's Incentive Award shall be afforded IRS Form W2 wage treatment and shall be subject to all required withholdings.  Plaintiff, on behalf of himself, acknowledges and agrees that he shall be solely responsible for any additional taxes that may be due or payable on the Incentive Award, and shall indemnify and hold Pepsi, Defendant's Counsel, and the Claims Administrator  harmless for any tax liability or penalty that may be imposed upon it or them in connection with the payment of the Incentive Award.

9.3   Plaintiff, on behalf of himself and as Class Representative on behalf of the Settlement Class, acknowledges and agrees that each Class Member shall be solely responsible for any taxes that may be due or payable on the non-wage portion of his or her Final Settlement Share, and that each Class Member shall indemnify and hold Pepsi, Defendant's Counsel and the Claims Administrator harmless for any tax liability or penalty that may be imposed upon it or them in connection with the payment of the Settlement Class Member's Final Settlement Share.

9.4   Plaintiff, on behalf of himself and as Class Representative on behalf of the Settlement Class, acknowledges and agrees that neither the Incentive Award nor any portion of any Final Settlement Share (a) will create any credit or otherwise

0YHD-200487

affect the calculation of any benefit provided to any Class Member under any benefit or compensation plan or program provided by Defendant, including any retirement savings, pension, bonus, unemployment insurance, severance or deferred compensation plan; (b) will be considered compensation for purposes of any such plan or program; (c) will require Defendant to make any contribution or award under any such plan or program; or (d) will otherwise modify coverage, contributions or benefits under any such plan or program.

9.5     The Parties acknowledge and agree that they have been represented by competent, experienced legal counsel of their own choosing throughout all negotiations which preceded the execution of this Settlement Agreement, and that this Settlement Agreement is made with the advice and consent of their respective counsel.

9.6     The Parties acknowledge and agree that this Settlement Agreement is fair and reasonable and will so represent to the Court.

## X.     NON-ADMISSION OF LIABILITY; INADMISSIBILITY OF SETTLEMENT

10.1    This Stipulation represents a compromise of highly disputed claims.  Pursuant to Rule 408 of the Federal Rules of Evidence, and any other analogous evidentiary rules that may apply, neither the Parties' settlement negotiations, nor the fact or any terms of the Settlement memorialized in this Stipulation, nor the Stipulation itself or any part thereof, nor any act performed, statement made or document executed pursuant to, or in furtherance of, the Settlement is intended, may be construed, or may be admitted into evidence, nor used in any other fashion, in this or any other legal or administrative proceeding of any kind in any forum, as an admission by the Defendant or any Releasee as to (a) the truth of any fact alleged in the Action; (b) the validity or value of any claim that was or could have been asserted in the Action or of any Released Claim; (c) the deficiency of any defense that was or could have been asserted in the Action, including any defense to class

0YHD-200487

or collective action certification; and/or (d) any liability, negligence, fault or wrongdoing of Defendant or any Releasee, which Defendant expressly denies.

10.2   To the extent permitted by law, this Settlement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceedings that may be instituted, prosecuted, or attempted with respect to the Released Claims in breach of or contrary to this Settlement.

## XI.   RELEASE OF CLAIMS

11.1   **Massachusetts Class Members' Release.**  The Massachusetts Class Members shall fully and finally release and discharge Defendant and its former and present parents, subsidiaries and affiliated corporations and their officers, directors, employees, partners, shareholders and agents, and any other successors, assigns, or legal representatives, including PepsiCo, Inc. and its and their parents, subsidiaries and affiliated corporations and their officers, directors, employees, partners, shareholders and agents ("Released Parties"), from any and all applicable Massachusetts wage and hour claims, rights, demands, liabilities and causes of action of every nature and description, whether known or unknown, including without limitation statutory, constitutional, contractual or common law claims for wages, damages, unpaid costs, penalties, liquidated damages, treble damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, equitable relief, or other relief under Massachusetts law, based on the following categories of allegations: (a) any and all claims for failure to properly calculate or pay any type of overtime wages, (b) any and all claims for the failure to properly calculate or pay earned wages of any kind, and (c) any other wage and hour violations, arising during the individual Massachusetts Class Member's Class Period ("Released Claims").

11.2   **FLSA Class Members' Release.**  FLSA Class Members who submit a Claim Form, including the Named Plaintiff, in addition to releasing the Released Parties

0YHD-200487

from the Released Claims as outlined in Paragraph 11.1 (where applicable), also release the Released Parties from any and all applicable state and federal wage and hour claims, rights, demands, liabilities and causes of action of every nature and description, whether known or unknown, including without limitation statutory, constitutional, contractual or common law claims for wages, damages, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, equitable relief, or other relief under the federal FLSA or other federal or state law, based on the following categories of allegations: (a) any and all claims for failure to properly calculate or pay any type of overtime wages, (b) any and all claims for the failure to properly calculate or pay earned wages of any kind, and (c) any other wage and hour violations, arising during the individual FLSA Class Member's FLSA Class Period or applicable state limitations period ("Released Federal Claims").

11.3 **Named Plaintiff's Release.** In addition to the releases set forth in Paragraphs 11.1 and 11.2, the Named Plaintiff shall release and discharge the Released Parties from all claims, demands, rights, liabilities and causes of action of every nature and description whatsoever, known or unknown, asserted or that might have been asserted, whether in tort, contract, or for violation of any state or federal statute, rule or regulation arising out of, relating to, or in connection with any act or omission by or on the part of any of the Released Parties committed or omitted prior to the execution hereof, relating to his employment, other than workers compensation claims. This includes any unknown claims the Named Plaintiff does not know or suspect to exist in his favor, which, if known by him, might have affected his settlement with, and release of, the Released Parties or might have affected his decision not to object to the settlement.

## XII. XI.   CONFIDENTIALITY AND PUBLIC COMMENT

0YHD-200487

12.1   The Parties agree that, prior to preliminary approval of the settlement, they will keep the terms of the settlement confidential except for the purposes of communicating with the Named Plaintiff only. The Named Plaintiff shall be informed that the settlement is confidential and shall be advised to keep the settlement confidential. Following preliminary approval, publicity will be limited to posting details of the settlement on Class Counsel's website(s) in order to facilitate administration of the settlement and responding to Class Members' inquiries. Neither Class Counsel nor the Named Plaintiff will in any way publicize the settlement, including via press conference, postings on the internet, unsolicited communication with other Class Members, etc. Class Counsel further agrees that no documents provided to them by Pepsi as part of this litigation shall be used for any purposes unrelated to this Action.

## XIII.   COOPERATION BETWEEN THE PARTIES

13.1   The Parties agree that they will cooperate fully, and use reasonable effort, to effectuate the terms and conditions of this Settlement Agreement, including, but not limited to, by executing such documents and taking such other action as may reasonably be necessary to ensure that the Settlement and this Settlement Agreement are finally approved by the Court without material modification and become Final, and to implement, effectuate and enforce the terms of this Settlement Agreement and the Final Approval Order.

13.2   The Parties agree to hold all court proceedings in the Action (except such proceedings necessary to implement and complete the Settlement) in abeyance pending the preliminary approval hearing and final approval hearing to be conducted by the Court. No additional discovery shall be conducted in this case unless this Settlement Agreement is nullified or otherwise not finalized.

## XIV.   CONSTRUCTION

0YHD-200487

14.1    This Settlement Agreement is the result of lengthy, arms-length negotiations between the Parties. It may not be construed in favor of or against any Party by reason of the extent to which the Parties and their respective counsel participated, or did not participate, in the drafting of this Settlement Agreement.

## XV.    CAPTIONS AND INTERPRETATIONS

15.1    Any paragraph and section titles, headings, captions and subheadings contained in this Settlement Agreement are for convenience only, and in no way define, limit, or extend the scope or terms of this Settlement Agreement or any of its provisions.

## XVI.    MODIFICATION AND WAIVERS

16.1    This Settlement Agreement may not be changed, altered or modified, except in a writing signed by both Parties and, if such modification is proposed to be made after the Settlement has become Final, approved by the Court.

16.2    Any failure by any Party to insist upon strict compliance by the other Party with any obligation, requirement or provision of this Settlement Agreement is not, and shall not be deemed or construed to be a waiver of future performance of the same or any other obligation, requirement or provision, and notwithstanding any such failure, each Party shall have the right to insist upon strict compliance with the same or any other obligation, requirement or provision of this Settlement Agreement at any time.

16.3    This Settlement Agreement shall be null and void and any order or judgment entered by the Court in furtherance of this Settlement shall be treated as void *ab initio* in the event: (i) the Court does not enter the Preliminary Approval Order specified herein; (ii) the Court does not finally approve the Settlement as provided herein; or (iii) the Settlement does not become final for any other reason. In such a case, the Parties and any funds to be awarded under this Settlement shall be returned to their respective statuses as of the date and time immediately prior to

0YHD-200487

the execution of this Agreement, and the Parties shall proceed in all respects as if this Settlement Agreement had not been executed.  To the extent the Court requires significant changes that substantially modify the Parties' agreement set forth in this document, the Parties shall meet and confer in good faith prior to either Party exercising his or their option to void the Settlement.

## XVII.  APPLICABLE LAW

17.1   The interpretation and, if necessary, enforcement of this Settlement Agreement shall be governed by, construed, interpreted, administered and enforced in accordance with the laws of the Commonwealth of Massachusetts, as to both its procedural and its substantive elements, and without giving effect to any conflict of laws or choice of law principles.

17.2   The Parties agree, however, that the interpretation and enforcement of the Parties' settlement itself shall be governed by the provisions of 29 U.S.C. § 216 and Federal Rule of Civil Procedure Rule 23.

## XVIII.  INTEGRATION CLAUSE

18.1   This Settlement Agreement constitutes the full, complete and exclusive agreement between the Parties regarding all of the subjects covered by the Stipulation, and cancels, supersedes and replaces any and all prior and contemporaneous negotiations, promises, covenants, representations and agreements, whether written, oral, implied-in-fact or implied-in-law, between the Parties and/or their counsel regarding any and all matters related, directly or indirectly, to any of the subjects covered by this Settlement Agreement.  Neither Party is relying on any representation or promise that is not expressly stated in this Settlement Agreement.

## XIX.  SEVERABILITY

19.1   The Parties mutually desire and intend that this Settlement Agreement be enforced to the fullest extent permissible in any jurisdiction in which its

0YHD-200487

enforcement is sought.  Accordingly, the Parties agree that, if any provision or provisions of this Stipulation, including the releases set forth above, is or are adjudged or declared by any court, agency, arbitrator or other forum of competent jurisdiction to be illegal, invalid or unenforceable, in whole or in part, for any reason, and provided that the rights and obligations of each Party under this Settlement Agreement will not be materially and adversely affected thereby, then such provision or provisions shall be modified only to the most limited extent necessary to remedy such illegality, invalidity or unenforceability in the jurisdiction in question, and shall otherwise remain as originally agreed-upon. Any such modification of a provision or provisions shall not affect or invalidate the remaining provisions of the Settlement Agreement in that jurisdiction, and shall not affect or invalidate any provision or provisions of the Settlement Agreement in any other jurisdiction.  To that end, and to that extent only, the Parties agree that the provisions of this Settlement Agreement are severable.

## XX.   BINDING ON ASSIGNS

20.1   This Settlement Agreement shall be binding upon, and inure to the benefit of, the Parties, the Class Members, the Releasees, and their respective heirs, trustees, executors, administrators, successors and assigns.

## XXI.   EXECUTION

21.1   This Settlement Agreement may be executed in counterparts, and when each Party has signed and delivered one such counterpart, each counterpart will be deemed an original, and, when taken together with the other signed counterpart, will constitute one Settlement Agreement, which will be binding upon and effective as to all Parties, subject to Court approval.

21.2   Whosoever executes this Settlement Agreement on behalf of the Parties and Class Counsel warrants and represents by doing so that he or she has full authority to do

0YHD-200487

so and to take all appropriate action required or permitted to be taken pursuant to this Settlement Agreement to effectuate the terms of the Settlement.

IN WITNESS WHEREOF, the Parties have duly executed this Stipulation as of the date indicated below.

FOR PLAINTIFF , THE FLSA CLASS AND
THE MASSACHUSETTS CLASS:

Dated: June 17, 2015

For: Stephen Boyd
Plaintiff and Class Representative,
On behalf of himself, the FLSA Class and the
Massachusetts Class

FOR DEFENDANT:

Dated: June ___, 2015

June 17, 2015

For Defendant
Bottling Group, LLC

0YHD-200487